**STATE of Iowa, Appellee,**

v.

**Thomas HARTY, Appellant.**

**No. 53249.**

Supreme Court of Iowa.

May 6, 1969.

Martin S. Gerber, Chicago, Ill., and Parkin & Cameron, Fairfield, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and Edward N. Wehr, Scott County Atty., for appellee.

STUART, Justice.

Defendant was charged by county attorney's information with larceny in the nighttime. Judgment of conviction was entered upon a jury verdict of guilty and defendant was sentenced to the State Penitentiary at Fort Madison for a period of ten years. He has appealed.

On July 26, 1966, Arthur Leichtfuss, a jewelry salesman, and his wife were staying at the Downtowner Motel in Davenport. The same evening, after making calls in the area, he returned to the motel and parked his "burglar proof" Oldsmobile where he could see it from his room. In the trunk, which was separated from the back seat by a steel plate, was a steel cage containing a gold jewelry line consisting of watches, charms and other items. Four keys were required to turn off a burglar alarm and open the trunk.

The car was taken from the lot between 10:00 p.m. and 7:00 a.m. Mr. Leichtfuss's car keys had been taken from his suit coat pocket during the night. About 10:00 a.m. July 27, the police found the car along a highway. The trunk was open and a large hole had been cut in the wire cage. Approximately $24,800 worth of jewelry was missing.

On July 25, Officer Curin of the Chicago Police Department received information this defendant, Ellis Young and Edward Healy were going to take a salesman's car on July 26. These three persons had been under surveillance by the Chicago police for three or four months. Curin and Detective Hunter followed the three men to Davenport early in the morning of the 26th. They observed them in downtown Davenport and walking in and out of the Downtowner Motel.

At about 8:30 p.m. the Chicago officers lost the subjects and their car, reported the description of the car to the Davenport police and returned to Chicago. Officer Risley of the Davenport police observed the described car at the Downtowner Motel

from 8:00 p.m. to 11:55 p.m. At 11:55 p. m. three men stood near the rear of their car. One placed a small case in the trunk. One returned to the motel. The other two drove off in the car. The officer tried to follow them but lost the car.

The three parties were later arrested at different locations in the Chicago area under warrants from the Davenport police with incriminating evidence in their possession. The circumstances of the arrests will be stated more fully where they are appropriate to the assigned errors.

I. Defendant's first three assigned errors are:

1. The trial court erred in admitting Officer Curin's testimony he received information defendant and others were going to steal a salesman's car because it was hearsay and deprived him of his right to confront witnesses against him in violation of the Sixth Amendment to the Constitution.

2. Defendant was deprived of a fair trial by testimony that the Chicago police had been working on the "case" of the defendant, and the prosecutor's question: "I don't want to get into anything of a prior criminal—Well, on July 26, 1966, Officer did you know what Mr. Harty looked like?" which constituted a reference to prior criminal conduct.

3. Defendant was deprived of a fair trial by the prejudicial misconduct of the county attorney.

■ Although under the record it is doubtful whether there is merit in any of these contentions, we do not reach that issue. Defendant failed to make a record which would entitle him to urge these alleged errors. None of these matters were raised in any manner in the proceedings in the trial court. They are presented for the first time on this appeal. They may not be raised at this late stage in the proceedings. State v. Cook, Iowa, 158 N.W.2d 26, 31–32; State v. Hardesty, Iowa, 153 N.W.2d 464, 469, 472; State v. Wallace, Iowa, 152 N.W.2d 266, 268; State v. Wesson, Iowa, 149 N.W.2d 190, 196; State v. Dwinells, 259 Iowa 945, 950, 146 N.W.2d 231, 234.

Present counsel did not represent defendant at trial.

II. Defendant, Young and Healy were each arrested in their own home under warrants for their arrest issued by the Davenport police department. The premises were searched and jewelry later identified as fruits of the crime and other incriminating evidence were found. The police had no search warrants.

Defendant argues the trial court erred "in admitting into evidence the items of jewelry seized without a search warrant from the homes of Harty, Young and Healy".

Defendant argues the search was invalid because one officer testified they could have obtained search warrants and that Trupiano v. United States, 334 U.S. 699, 709, 68 S.Ct. 1229, 92 L.Ed. 1663, 1671, requires the officers to obtain search warrants whenever practicable.

Defendant concedes this portion of Trupiano was specifically overruled in United States v. Rabinowitz, 339 U.S. 56, 65–66, 70 S.Ct. 430, 435, 94 L.Ed. 653, 660, by the following language:

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant. Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a

search warrant, for the warrant is not required. To the extent that Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment."

However, defendant believes the language in Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 2125, 20 L.Ed.2d 1154, 1161, " 'except in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' Camara v. Municipal Court [of City and County of San Francisco], 387 U.S. 523, 528–529, 87 S.Ct. 1727, 1731, 18 L.Ed.2d 930 [935]" indicates Rabinowitz is "losing ground".

■ We do not agree. A reasonable search incident to a lawful arrest has long been one of the "carefully defined" exceptions to the search warrant requirement. "The test is reasonableness as to place, time and area." Dunek v. District Court of Lee County, 258 Iowa 673, 675, 140 N. W.2d 372, 374, and cases cited therein; Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; State v. Raymond, 258 Iowa 1339, 1344, 142 N.W.2d 444, 447.

■ "It has been repeatedly held that what is a reasonable search depends upon the facts and circumstances of each case." State v. Anderson, Iowa, 148 N.W.2d 414, 417 and citations.

■ There are many federal cases in which it has been held it is reasonable to search a room, house or apartment occupied by the person being arrested as incidental to the lawful arrest. United States v. Rabinowitz, supra, (1950); Harris v. United States, 331 U.S. 145, 151, 67 S.Ct. 1098, 91 L.Ed. 1399, 1406 (1947); Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145, 51 A.L.R. 409 (1925); Theriault v. United States, 401 F.2d 79, 83 (8th Cir. 1968); United States v. Baratta, 397 F.2d 215, 223 (2d Cir. 1968) (cert. denied, 393 U.S. 939, 89 S.Ct. 293, 21 L.Ed.2d 276); United States v. Smith, 393 F.2d 687, 689 (6th Cir. 1968); Lemons v. United States, 390 F.2d 346, 349 (9th Cir. 1968); Jenkins v. United States, 361 F.2d 615, 619 (10th Cir. 1966); United States v. Owens, 346 F.2d 329, 332 (7th Cir. 1965); Wion v. United States, 325 F.2d 420, 423 (10th Cir. 1963).

■ We hold the searches here were reasonable and the court did not err in admitting the exhibits obtained.

III. Defendant had no standing to object to the admission of the exhibits discovered in the Young and Healy homes.

■ "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing." Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (March 10, 1969).

In Alderman, petitioners discovered some conversations had been overheard by unlawful electronic eavesdropping and each demanded a retrial if any of the evidence used to convict him was the product of unauthorized surveillance, regardless of whose Fourth Amendment rights were violated. After stating the established principle quoted above the court said: "No rights of the victim of an illegal search are

at stake when the evidence is offered against some other party. The victim can and very probably will object for himself when, as and if it becomes important for him to do so.

"What petitioners appear to assert is an independent constitutional right of their own to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment. But we think there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion.

"* * * we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth."

■ Defendant's right of privacy was not invaded by the search of the Young and Healy homes and the stolen merchandise found therein was admissible against him.

IV. Although we are not placing our decision on this ground because of conflicting evidence, we doubt that exhibit E was the product of any search, legal or illegal, of defendant's premises. The record shows:

"After we had arrested Young, we took him to the home of Harty where he was arrested. After Harty had been arrested, I asked him if he knew anything about the theft of jewelry in Davenport and he said no. We asked his daughters if their father had brought home any jewelry and one told us that he had brought home a watch, which was on a dresser in the bedroom. She was visibly upset. She was crying.

"Q. And did she bring you that watch? A. Yes. (Tr. 221)

"The watch which she brought is State's Exhibit E."

If this version of the arrest is accepted, the officers made no search to obtain exhibit E.

For the reasons stated above the trial court is affirmed.

Affirmed.

All Justices concur.