**STATE of Iowa, Appellee,**

v.

**Raymond Gerald WISNIEWSKI, Appellant.**

No. 53117.

Supreme Court of Iowa.

Nov. 12, 1969.

Paul H. Kinion, Cedar Rapids, for appellant.

Richard C. Turner, Atty. Gen., William A. Claerhout, Asst. Atty. Gen., and William G. Faches, Linn County Atty., for appellee.

LeGRAND, Justice.

A jury found defendant guilty of robbery with aggravation. He was sentenced to serve a term of not more than 25 years in the penitentiary under section 711.2, Code of Iowa, 1966, a judgment from which he appeals.

Defendant says three errors entitle him to a new trial. They are: (1) permitting testimony which defendant claims was based upon an out-of-court identification procedure violating his right to assistance of counsel under Amendments 6 and 14, Constitution of the United States; (2) instructing the jury that defendant had the burden of proving his alibi; and (3) refusing to permit the testimony of an alibi witness because notice of her testimony had not been given as required by section 777.18, Code of Iowa, 1966. We reverse and remand for a new trial under (2) above.

Before considering these assignments, we recite the facts upon which the conviction was based. On February 22, 1968, defendant and a confederate entered a Cedar Rapids grocery store and robbed Louis Berry of approximately $350.00. Defendant's confederate carried a rifle, and during the course of the robbery one or both threatened to shoot Mr. Berry. Although this threat, fortunately, was not carried out, Berry was nevertheless beaten severely about the head and face.

While the robbery was in progress, two customers, William Elias and Vicki Turner, entered the store and made purchases. Both saw Berry lying on the floor behind the meat counter, and at least one saw defendant's confederate crouching behind the counter holding a rifle. Defendant waited on these customers, took their money and gave one of them change. Understandably alarmed, Vicki Turner quickly left the store and immediately asked a friend to call the police. She then returned in time to see defendant and his companion, still carrying the rifle, leave the store.

Two other girls, Donna Hammen and Susan Mason, observed defendant as he was leaving the scene.

All of these persons—Mr. Berry and the four who entered the store during the robbery—testified at the trial and identification of defendant as one of·the men who committed the robbery depends on their testimony.

Mr. Berry testified defendant had been in his store during the afternoon of the day of the robbery. He had made a few purchases for which he was unable to pay, stating he would come back later with the money. When he came back later that evening, Mr. Berry first assumed he was there for that purpose. Berry's identification of defendant was positive.

Mr. Elias and Miss Turner both testified to defendant's participation in the robbery from their on-the-spot observations.

Miss Hammen and Miss Mason, student nurses, entered the store together as defendant was leaving. They testified to seeing the man with the gun, but neither gave convincing identification testimony concerning defendant. Miss Mason, in fact, could not identify him at all. Defendant did not object to her testimony, and we therefore disregard her in our discussion of the case.

I. Defendant's first assignment of error concerns the identification testimony of these witnesses, which is challenged on the basis of an identification procedure carried out by the Cedar Rapids police department. Defendant was picked up and taken to the police station several hours after the robbery. Sometime between 10:00 and 11:00 P.M. that night—approximately three hours after the crime—Berry, Elias,

Vicki Turner, Donna Hammen, and Susan Mason were taken to the police station separately and asked to observe defendant for the purpose of identifying him.

Defendant was sitting in a room talking with a police officer. No one else was in the room. The witnesses viewed him through a mirror or window. They were uncertain as to whether defendant could see them. The record shows the police used no persuasion upon the witnesses to secure an identification. No suggestion was made to them, and no opinion as to defendant's involvement was expressed by the officers. The witnesses all testified they were simply told to look at the man and say if he was the person they had seen in the grocery store earlier.

Defendant asserts this amounted to an illegal one-man lineup upon which the later in-court identification depended. He claims he was without counsel when the police station identification took place; that this was a violation of his constitutional rights under Amendments 6 and 14 to the Constitution of the United States; and that there was no sufficient independent source of information shown to justify the identification evidence at trial.

Defendant relies on three United States Supreme Court cases decided on June 12, 1967. They are United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178; and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199.

Both Wade and Gilbert hold an accused is entitled to counsel under Amendment 6, Constitution of the United States when an identification procedure is conducted at a critical prosecutive stage. As pointed out in Gilbert (87 S.Ct. 1951, page 1185 of 18 L.Ed.2d), this constitutional safeguard is made applicable to the states by Amendment 14.

■ Those cases held the rule to be applicable only to identifications made subsequent to June 12, 1967, and Stovall, therefore, was not entitled to its benefits. The Stovall case, however, announced the additional rule that out-of-court identifications may violate the due process clause of Amendment 5 "[if] the confrontation [is] unnecessarily suggestive and conducive to irreparable mistaken identification." Some of the factors to be considered in determining the ultimate fairness or lack of fairness in the procedure are "prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification."

■ It should be noted that an illegal out-of-court identification procedure does not necessarily bar identification testimony by that witness at trial. It merely precludes the use of the "tainted" identification and requires clear and convincing proof that any identification made at trial had an independent origin and does not depend for its validity upon the illegal lineup procedure. United States v. Wade, supra, 87 S.Ct. 1926, at page 1166 of 18 L.Ed.2d; Gilbert v. California, supra, 87 S.Ct. 1951, at page 1186 of 18 L.Ed.2d.

It should be mentioned, too, that defendant's objection in the present case relates only to failure to have counsel at what is claimed to be a critical stage of the case. No claim is asserted, nor could it be under the Wade decision, defendant was compelled to give evidence against himself in violation of Amendment 5 to the Constitution of the United States. Wade clearly holds identification procedures do not offend against that constitutional safeguard. United States v. Wade, supra, 87 S.Ct. 1926, 18 L.Ed.2d at page 1154.

Defendant argues there was an illegal out-of-court identification procedure: that

it so tainted the in-court identification that the witnesses should not have been permitted to testify under the rule adopted in Wade and Gilbert; and that the identification procedure followed, regardless of Wade and Gilbert, was so unnecessarily suggestive and conducive to irreparable mistaken identity that it violated the due process clause of Amendment 5, contrary to the doctrine promulgated by the Stovall case.

■ We need not decide now the propriety of the practice followed by the police department here because we find the in-court identification had an independent origin and was not based on the identification procedure objected to here.

This is particularly true of witnesses, Berry, Elias, and Miss Turner, whose observation of defendant at the time of the crime was under circumstances lending great weight to their in-court identification. Defendant virtually concedes this in his brief and argument, levelling most of his complaint against the testimony of Miss Hammen and Miss Mason.

As already noted Miss Mason made no identification and her testimony was not objected to. Miss Hammen's identification was at best weak. However, it was based solely on her observations at the scene of the robbery and was admissible for whatever credence the jury elected to give it.

In connection with the testimony of all these witnesses we point out their in-court identifications were based entirely on their observations at the scene of the robbery. The police station procedure was brought out only on cross-examination.

The trial court conducted extensive voir dire examinations on the disputed identifications, finding—properly, we think—the circumstances under which the witnesses observed defendant at the time of the robbery furnished adequate independent source to meet the conditions set out in Wade and Gilbert.

In support of our conclusion see the following cases, all of which were decided subsequent to Wade and Gilbert. Hanks v. United States, 10 Cir., 388 F.2d 171, 174; Fitts v. United States, 5 Cir., 406 F.2d 518; State v. Carrothers, 79 N.M. 347, 443 P.2d 517, 519; Tyler v. Maryland, 5 Md. App. 158, 245 A. 592, 595, 597; Shepard v. State, Fla.App., 213 So.2d 11, 12; and State v. Cannito, 183 Neb. 575, 162 N.W.2d 260, 261.

However, we must still determine whether the police procedure violated the Stovall rule. In other words, was defendant denied due process under Amendment 5 because the so-called lineup was unnecessarily suggestive and conducive to irreparable false identification?

Much of what we have already said is also applicable to this part of our discussion.

■ We find no violation of due process. The identification was made promptly after commission of the crime. The whole future course of the police investigation depended upon a determination that defendant was, or was not, one of the parties to the crime. Far from encouraging false identification, the quick viewing of defendant by the witnesses would minimize such a possibility. No attempt was made to influence the witnesses. As pointed out in the Stovall case, an early identification procedure, if properly carried out, serves just as well to free a suspect from unjust suspicion as it does to fasten the accusation of guilt upon him.

No case has been called to our attention which holds an identification under circumstances similar to those under examination here violates due process. See Caruso v. United States, 2 Cir., 406 F.2d 558, 559; People v. Palmer, 41 Ill.2d 571, 244 N.E.2d 173, 174.

We find no merit to defendant's claim the identification testimony was improperly admitted.

II. Defendant's second alleged error deals with the alibi instruction given by the trial court.

■ Despite defendant's claim to the contrary, we find the question now urged was not raised in the trial court. No objections were taken to the instructions. In a criminal case it is permissible to postpone such objections until after trial and to make them a basis for asking a new trial. Section 787.3(5) (7), Code of Iowa; State v. Schmidt, 259 Iowa 972, 980, 145 N.W.2d 631, 636. However, defendant did not do so.

The only complaint about the alibi instruction in the motion for new trial was the following:

"That the court erred * * * [in giving its instruction on alibi] to the jury because said instruction fails to define what weight of proof the defendant was under the law bound to establish his alibi. Said instructions should have told the jury that the defendant had to prove said alibi by a 'preponderance' or the 'greater weight' of the evidence. The court further erred in said instruction because it failed to define the term 'preponderance of the evidence.'"

This does not raise the issue now before us. It merely claims the trial court improperly defined the burden of proof; it does not assert, as defendant now tells us, the burden was not his at all.

■ Ordinarily this failure would preclude our consideration of the matter. We have frequently and consistently ruled errors not presented in the trial court, including constitutional questions, may not ordinarily be made the basis for reversal on appeal. State v. Franklin, Iowa, 163 N.W.2d 437, 441; State v. Harty, Iowa, 167 N.W.2d 665, 667. See also discussion in State v. LaMar, 260 Iowa 957, 967, 968, 151 N.W.2d 496, 503.

But other circumstances present here require us to consider whether this appeal demands a departure from that general rule.

This case was tried in March of 1968. At the time of trial, and when motion for new trial was filed, our long-fixed and inflexible rule was that the alibi instruction, substantially as given here, was proper. It had been attacked many times but had been approved as recently as State v. LaMar, supra, and State v. Carter, Iowa, 161 N.W.2d 722, 727.

Not until State v. Galloway, Iowa, 167 N.W.2d 89, 95, 96, filed April 8, 1969—more than a year after trial of the present case —was the alibi instruction which put the burden of proof on defendant set aside as reversible error. The Galloway case was followed quickly by State v. Evans, Iowa, 169 N.W.2d 200, 203, which also vacated a conviction based on the now erroneous alibi instruction.

Before then it had withstood all assault, although recent decisions had been by sharply divided vote which, at least in retrospect, presaged its ultimate reversal. State v. Stump, 254 Iowa 1181, 119 N.W.2d 210; State v. LaMar, supra; State v. Carter, supra.

In this connection Johnson v. Bennett, 8 Cir., 414 F.2d 50, decided shortly after Galloway and Evans, is of some interest. There the Circuit Court of Appeals pointedly reviews and discusses our travail over the alibi rule. Reference is made to "indications of struggle in the decisional process" within the court and to our recent six-to-three and five-to-four opinions upholding it.

Incidentally "struggle in the decisional process" over this rule is not unique with us. The 8th Circuit itself split five to three in Stump v. Bennett, 8 Cir., 398 F.2d 111, the case which first held our alibi rule to be violative of the due process clause of Amendment 14. In Johnson v. Bennett, supra, three judges concurred in the result but reiterated their disagreement with the reasoning of both Stump and Johnson.

We have squarely presented, then, the issue whether defendant may rely now on a

rule adopted *after his trial* or whether he is estopped from enjoying its protection because he did not urge it upon the trial court at a time *when it was not the law and when it would have been apparent error for the trial court to sustain any objection made.*

■ We hold defendant should have the benefit of the Galloway decision. We neither depart from, nor dilute, the rule that failure to assert a *known or existing* right in the trial court is fatal; but here there was no such right. Any objection made would have then been without merit. It might be argued that our vigorous disagreement about the rule over the years should have alerted defendant to repeat again, as counsel in Galloway did, an objection which had been made and rejected countless times before.

This appears quite obvious now as hindsight. It was not so apparent in March of 1968, when the case was tried. Not until State v. Carter, Iowa, 161 N.W.2d 722, 727, (filed October 15, 1968), did we take note of coming events by conceding our approved alibi instruction would soon come under the critical scrutiny of the Supreme Court of the United States.

We note, too, that Stump v. Bennett, 8 Cir., 398 F.2d 111, which held our alibi instruction to be constitutionally objectionable, was not decided until three months after this case was tried.

Under these circumstances we hold defendant may raise here for the first time a right arising *after* his trial. We find authority for this in O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189. Prior to that decision Ohio by a rule of longstanding permitted the prosecutor to comment on a defendant's failure to testify, which was held unconstitutional in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106. O'Connor's trial took place prior to the Griffin decision, but his conviction was still on direct appeal when that case came down—the same procedural chronology confronting us here.

At pages 253–254 of 87 S.Ct., at page 191 of 17 L.Ed.2d the court said:

" * * * [F]ailure to object in the state courts cannot bar the petitioner from asserting this federal right. * * * Defendants can no more be charged with anticipating the Griffin decision than can the States. * * * [H]is failure to object to a practice which Ohio had long allowed cannot strip him of his right to attack the practice following its invalidation by this Court."

See also State v. LaMar, supra, at pages 968, 969, of 260 Iowa Reports, 151 N.W.2d 496, where we mention approvingly the O'Connor v. Ohio rationale.

In State v. Franklin, supra, 163 N.W.2d at page 441, we said, *"Ordinarily matters not raised in the trial court, including constitutional questions, cannot be effectively asserted the first time on appeal * * *."* (Emphasis added.) State v. Everett, Iowa, 157 N.W.2d 144, 148, and State v. LaMar, supra, contain identical statements.

The rule is not absolute, and we hold defendant is entitled to have it relaxed here to allow application of the Galloway case in his behalf.

■ But the State argues the rule established in Galloway is not retroactive. We agree; but a reversal here would not involve retroactive application of that case. A change of law should be given effect in a case still on direct review when the change occurs.

In Galloway (167 N.W.2d at page 96) we said, "The Supreme Court of the United States in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, said: ' * * * a change in law will be given effect while a case is on direct review * * *.'"

We repeated this statement in State v. Evans, Iowa, 169 N.W.2d 200, 203, to give the advantage of the Galloway rule to Evans, whose trial was held prior to Gal-

loway but whose appeal was processed after that decision.

Like Evans, this defendant is in the fortunate position of having his appeal pending when we scrapped the alibi instruction placing the burden of proof on him. As in the Evans case, too, his conviction under that now discredited rule should not be allowed to stand.

For the reasons stated in this division we reverse and remand for a new trial. Although it is apparent from what we have already said, we mention in fairness to the trial court that giving the alibi instruction was proper when this case was tried.

III. In view of our conclusion in Division II we need not consider defendant's last assignment of error dealing with the trial court's refusal to permit an alibi witness to testify because of failure to give notice of her testimony under section 777.18, Code of Iowa. Upon retrial defendant will have ample opportunity to comply with the statute.

Reversed and remanded.

MASON, RAWLINGS and BECKER, JJ., concur.

STUART, J., concurs specially.

SNELL, J., GARFIELD, C. J., LARSON and MOORE, JJ., dissent from Division II and the result but concur in that part of the opinion preceding Division II.

STUART, Justice (concurring specially).

I concur in Division I and believe the result reached in Division II is the only practical result under O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189, 191, as a federal constitutional right is involved. However, I do not believe the rules governing orderly appellate procedure should be suspended further than required. I therefore cannot join in the broad language of Division II. See: State v. Schat-

terman, Iowa, 171 N.W.2d 890 filed November 12, 1969.

SNELL, Justice (dissenting).

I respectfully dissent.

I cannot agree with Division II and the result reached by virtue thereof.

Division II properly says that the issue was in no way properly raised in the trial court. It is then said: "We have frequently and consistently ruled errors not presented in the trial court, including constitutional questions, may not ordinarily be made the basis for reversal on appeal." Recent authorities for this statement are cited. With this statement I agree.

This statement then appears: "But other circumstances present here require us to consider whether this appeal demands a departure from that general rule." With this statement I do not agree.

There is an old statement that hard cases make bad law. It might also be said with some persuasiveness that when there is a substantial question as to the fairness of the trial or in any way an accused has been mistreated or any doubt exists as to the guilt of the accused, courts will consider and point to allegations of error that would ordinarily be treated as so harmless as to have no possible effect on the jury.

Such is not the case here. There is neither claim nor the faintest suggestion of innocence. The statement of facts from which the majority proceeds is that the defendant committed an armed robbery aggravated by a threat to kill.

This is not such a case as to justify the overruling or even departure from our well established rules.

As noted, supra, there was no objection in the trial court to the instruction now found to be error.

State v. Galloway cited and quoted by the majority does not support the conclusion now reached. In Galloway objection

to the instruction was made in the trial court and so the error was properly preserved.

In Galloway we said a change in law would be given effect while a case is on direct review citing Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601. Neither Linkletter nor Galloway placed the rule on a basis that would require retroactive application in a case where the error had not been previously preserved.

By the majority opinion an exception to the general rule appears to have eliminated it in all cases where the new matter asserted on appeal involves a federal constitutional right newly created since the case became final. Thus there are now two general rules: one stating that nonconstitutional questions must be raised below, even though unknown at the time of trial; the other, that constitutional questions need not be so raised, unless known.

I fail to see what difference it makes wherein the right claimed on appeal is founded.

The authorities called upon by the majority to support its new rule are not convincing.

O'Connor v. Ohio, 385 U.S. 92, 87 S.Ct. 252, 17 L.Ed.2d 189, says: "We hold that in these circumstances the failure to object in the state courts cannot bar the petitioner from asserting this federal right." (loc. cit. 253 of 87 S.Ct.) In O'Connor, Ohio had sought to negate the applicability of Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, on the ground that petitioner had failed to properly object. The supreme court noted that Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, in rendering Griffin prospective only, had specifically added that Griffin was to apply to all cases which had not become final at the time

Griffin was announced. Therefore, the court concluded that Ohio could not bypass Griffin because of defendant's failure to object, since defendant's case fell within the specific limit created by Tehan.

O'Connor properly applies, therefore, only to similar cases where a new rule has been made specifically applicable to cases which have not become final at the time the new rule was announced. Those circumstances are not present here.

Yet it appears that by use of the constitution, all of these cases are said to require reversal here. On two levels, the constitution can have nothing to do with this case.

On the first level, it is apparently thought by the majority that this court is constitutionally bound to follow the language in Linkletter which we approved pro tanto in Galloway. We are not so bound. Linkletter itself says that the constitution neither requires nor forbids retrospective application of the law. Be it argued that we are not here dealing with "retrospectivity", yet it cannot be gainsaid that every case decided is given the benefit of some retrospectivity. But I think the obvious lesson from Linkletter, too often forgotten in the rush of constitutional lawmaking, is that there is no constitutional cut-off point with respect to the applicability of judicial decisions.

The second level on which it is sought to constitutionally ground this case has already been mentioned. It can make no sensible difference with respect to the general rule requiring proper objections whether the claimed error is based on the constitution or the common law. To say that such a difference exists in effect overrules countless cases which have never before drawn such a distinction.

I would affirm.

GARFIELD, C. J., and LARSON and MOORE, JJ., join in this dissent.