STATE of Iowa, Appellee,

v.

Gary Wayne **THRASHER**, Appellant.

No. 53164.

Supreme Court of Iowa.

March 10, 1970.

Martin R. Dunn, Des Moines, for appellant.

Richard Turner, Atty. Gen., James W. Hughes, Asst. Atty. Gen., Ray A. Fenton, County Atty., Des Moines, and James D. McKeon, Asst. County Atty., for appellee.

MASON, Justice.

Gary Wayne Thrasher was charged by indictment with murder as defined in sections 690.1 and 690.2, Code, 1966, counsel was appointed for him at his request and defendant pleaded not guilty. Trial to a Polk County jury resulted in a verdict of guilty of second degree murder. Motions for new trial, in arrest of judgment and for judgment notwithstanding the verdict were overruled and defendant was sentenced to imprisonment in the state penitentiary for a term of 35 years.

Defendant appeals assigning as error the giving of two instructions relating to the weight to be given his testimony and evidence of flight.

Although the facts are not in dispute, some narration is necessary because of the nature of the issues presented.

Defendant and decedent were married. They, their baby and Mike Meyers, a longtime friend of theirs, lived in an apartment house on East Fourteenth Street in Des Moines. Donnie Childers and his wife lived in one of the other apartments at this address, Kenneth Kettlar and his wife in another.

About 6:30 a. m. March 8, 1968, defendant and Meyers left for work. When they returned home sometime in the afternoon, defendant and his wife got into an argument about keys to the automobile and the fact that he hadn't left her money for milk. The two men went to the store, got milk and beer and returned to the apartment. The argument between defendant and his wife continued with her threatening him with a knife and him slapping her and pointing a shotgun at her to scare her. Meyers asked defendant if the gun was loaded and when defendant opened it, there was a shell in it. Meyers took the

gun, put it in the closet and hid the shell under a pile of blankets on the closet shelf. This type gun had to be cocked in order to fire. Meyers left with a lady friend before the fatal shooting.

Childers went to the Kettlar apartment around 4 p. m. Both had heard the Thrashers cussing and arguing for some time. About 4:15 they heard a shot. Defendant came to Kettlar's apartment saying he had shot his wife, asked them to call the police and an ambulance. While Childers went to make the telephone calls, Kettlar went to the Thrasher apartment and found Mrs. Thrasher lying on the floor. When he returned to his apartment Thrasher asked if his wife was dead. Kettlar told him it looked like she was, and defendant said, "Well, my God, Kenny, I didn't mean to do it, it was an accident. She grabbed the gun barrel. It went off." The two men described defendant as very nervous, delirious, crying and scared to death as he took off running toward East Fourteenth Street.

Gary Clark, a Des Moines police officer, testified he found defendant at East Fourteenth and Mattern, barefoot and wearing a T-shirt, walking south, approximately eight blocks north of the 1400 block, placed him under arrest, advised him of his constitutional rights and took him to the police station.

The Polk County medical examiner arrived at the apartment about 4:30 p. m., found Mrs. Thrasher lying on the kitchen floor, obviously dead and a four-ten shotgun lying inside the room. He diagnosed the cause of death to be massive brain hemorrhage caused by a shotgun blast.

Some additional facts gathered from defendant's testimony covering the period from when Meyers left the apartment until defendant was arrested are relevant to a consideration of his attack on the fairness of his trial.

Mrs. Thrasher left shortly after Meyers, came back a little later, got a knife and told defendant she was going to kill herself. Thrasher took the knife away from her as they continued arguing. She told him she was going to "do it again" and this time she would shoot herself. Defendant got the gun from the closet but says he never put a shell in it. The gun was on the kitchen table and as his wife walked over to the sink, Thrasher raised the gun and cocked it, thinking she was going to get another knife. The gun was pointed at an angle toward the ceiling over the sink, with the butt of the gun in his stomach. When decedent reminded defendant he had said he would put the gun away, he said he would if she would leave the knives alone. With that defendant felt her grab the gun, there was a jerk and he heard the explosion. When Thrasher did not see his wife, he thought she had ducked under the table, he yelled at her, asked if she was alright. When she didn't answer he jumped up, came around the table and saw what had happened. Defendant immediately ran out the door to the front apartment, told the people there to call an ambulance and see if they could help his wife. Thrasher said he was in the state of shock at the time and ran down the street to his boss' house to tell what had happened. When the boss' wife didn't believe him, he ran out of the house, started back to the apartment going south on Fourteenth Street when the police stopped him, took him back to the scene and then to the police station.

On both direct and cross-examination defendant maintained he did not know the gun was loaded or how it got loaded.

■ I. Defendant's first assignment of error challenges the validity of instruction 16 which we set out:

"The law gives the defendant the right to testify in his own behalf, and it is for the jury to determine the weight to be given to his testimony, as in the case of any other witness.

"In considering and weighing his testimony you are not required to receive the testimony of the defendant as true, but to give it full and careful consideration, and determine whether it or any part of it is

true or false, and whether such testimony is given by the defendant in good faith or for the purpose of avoiding conviction. You may take into consideration his interest in the outcome of this case as a person charged with a crime, and you should give his testimony such weight as you deem it entitled to in view of all of the facts and circumstances in evidence before you."

In instruction 20 the court also submitted to the jury the law governing the weight to be given all evidence which told them in part:

" * * * In passing on the credibility of the witnesses and weighing their testimony, you may and should consider * * their interest or lack of interest in the result of the trial, the motives, if any, actuating them as witnesses, their candor, fairness, bias or prejudice, the reasonableness and probability of their statements or the want thereof, * * *."

In motion for new trial defendant objected to instruction 16 as an improper statement of law, asserting it deprived him of his constitutional rights of a fair and impartial trial by giving undue attention and significance to the fact he had taken the stand and implies that because he is the accused he would be more likely to perjure himself than any other witness appearing at the trial, and thus he did not receive a fair and impartial trial. His objection to the instruction was timely (section 787.3 and State v. Brown, Iowa, 172 N.W.2d 152, 156–160) and served to alert both the trial court and the State in what respect defendant claimed he was not receiving a fair trial.

The identical instructions were given by the court in State v. Bester, Iowa, 167 N.W.2d 705, 706–707, where, after tracing the history of attacks made in this court on an instruction substantially identical to instruction 16, we held the giving of this instruction constituted reversible error. The case was decided May 6, 1969.

The present case went to trial May 9, 1968, the jury verdict was returned May 14. Defendant's notice of appeal was perfected May 24. See Code section 793.4.

Defendant contends the Bester decision, in holding an instruction which specially comments on the credibility of defendant as a witness is reversible error, applies to his case because a change in law must be given effect while a case is on direct review. In Bester defendant argued the problem as violating his rights under Amendment 5 to the federal constitution. There we did not reach the constitutional issue but approached the problem from the standpoint of defendant's right to a fair trial. Thrasher in written argument does not raise the constitutional issue but, as previously noted, contends he did not receive a fair trial. This is the same challenge made in the trial court to instruction 16.

The State, on the other hand, argues the court did not err in giving instruction 16, since this case was tried approximately one year before Bester was announced and, with the exception of that case, its holding should be applied prospectively.

These contentions present the question whether the Bester decision is to be applied to cases tried before date of that decision which were still pending on direct review on the date it was announced. It involves the troublesome problem of the effective date of criminal decisions relating to rights of the accused. To say a rule announced is to be applied retroactively or prospectively is not the complete answer. Retroactive or prospective application has generally been fixed with reference to some other factor.

"For instance, the Miranda requirements (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974) for determining the voluntariness of statements are applied only to trials subsequent to the date of that opinion. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, 892, 893. That case gives the same restricted application to Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.

"Stovall v. Denno * * * [388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199] limits the effect of newly adopted pre-trial identification procedures to those conducted after the date of the decisions in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed. 1178. In Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, the court refused to apply the standards of rule 11, Federal Rules of Criminal Procedure, to any case in which a plea had been entered prior to the court's opinion in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, which had set out the new rules in question." State v. Jackson, Iowa, 173 N.W.2d 567, 570.

The rule pronounced in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, involving search and seizure, was announced prospectively operant from the date of the Mapp decision but available to defendants whose convictions were not yet finalized (meaning where conviction rendered but before avenues of appeal from conviction exhausted and before time for certiorari having elapsed). Linkletter v. Walker, 381 U.S. 618, 622, 85 S.Ct. 1731, 1734, 14 L.Ed.2d 601.

Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453, rendered this same treatment to the rights provided in Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, a decision condemning prosecutor's comments on defendant's failure to testify.

Duncan v. State of Louisiana, 391 U.S. 145, 194, 88 S.Ct. 1444, 20 L.Ed.2d 491, 522, holding the states cannot deny request for a jury trial in serious criminal cases, and Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522, determining the right to jury trial extends to trials for serious criminal contempts, were both held in DeStefano v. Woods, 392 U.S. 631, 633–635, 88 S.Ct. 2093, 2095–2096, 20 L.Ed.2d 1308, to have prospective application to trials beginning only after the date of those decisions.

Lee v. State of Florida, 392 U.S. 378, 88 S.Ct. 2096, 20 L.Ed.2d 1166, involving the use of evidence obtained in violation of the provisions of the Federal Communications Act was held in Fuller v. Alaska, 393 U.S. 80, 81, 89 S.Ct. 61, 62, 21 L.Ed.2d 212, 213, to be given prospective application only to trials where such evidence is introduced after the date of the Lee decision.

Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, a search and seizure case overruling previous cases holding that search and seizure of speech requires some trespass or actual penetration of the particular enclosure, was held in Desist v. United States, 394 U.S. 244, 254, 89 S.Ct. 1030, 1036–1037, 22 L.Ed.2d 248, to be prospectively applicable only to those cases where the prosecution seeks to introduce the fruits of electronic surveillance conducted after the date of the Katz decision.

State v. Evans, Iowa, 169 N.W.2d 200, holds the pronouncement made in State v. Galloway, Iowa, 167 N.W.2d 89, that the giving of an instruction placing the burden of proving alibi on defendant was reversible error. The Evans case was tried but was on direct review at the time the Galloway decision was announced. The decision was based upon the holding of the United States Supreme Court in Linkletter v. Walker, supra, cited with approval in Galloway.

In State v. Jackson, supra, Iowa, 173 N.W.2d at 570, we held the guideline standards adopted in State v. Sisco, Iowa, 169 N.W.2d 542, were to be applied only to guilty pleas entered after the date of that opinion, July 24, 1969. The holding of the Supreme Court in Halliday v. United States, supra, was followed.

Because defendant's appeal attacking the alibi instruction was pending when the decision in State v. Galloway was announced, this court held in State v. Wisniewski, Iowa, 171 N.W.2d 882, the Galloway decision, filed

more than one year after the Wisniewski trial, applied.

In State v. Schatterman, Iowa, 171 N.W. 2d 890, we did not apply the rule announced in State v. Galloway since defendant did not object to the instruction condemned in State v. Bester, supra.

On the other hand, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799, right to counsel; Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L. Ed.2d 114, right to counsel at arraignment, a critical stage in a criminal proceeding in Alabama; Douglas v. People of State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed.2d 811, right to counsel on appeal; Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, procedure for determination of voluntariness of a confession; and Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, right of an indigent to a free transcript and record for purposes of appeal, have been held by the United States Supreme Court to be wholly retroactive.

Nothing is mentioned concerning the retroactivity of right to counsel in Gideon v. Wainwright, itself. However, footnote 13 in Linkletter v. Walker, 85 S.Ct. loc. cit. 1737 regards fact that since petitioner appealed via post-conviction remedy provision, his case was finalized before promulgation of the rule, his conviction was reversed for violation of the right conferred, and this is instance of retroactive application. Its retroactivity is acknowledged again in Stovall v. Denno, supra.

Retroactive application of the rule announced in Jackson v. Denno is noted in Linkletter v. Walker, 85 S.Ct. loc. cit. 1737, 1743; Tehan v. United States ex rel. Shott, 86 S.Ct. loc. cit. 465; Stovall v. Denno, 87 S.Ct. loc. cit. 1971; and in Johnson v. State of New Jersey, 86 S.Ct. loc. cit. 1778.

Retroactive application of the rights announced in Griffin v. People of State of Illinois was made clear in Eskridge v. Washington State Bd. of Prison T. & P.,

357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269. There petitioner was denied appeal from 1935 conviction because of his inability to provide state supreme court a trial transcript. The Court applied the rule in Griffin v. People of State of Illinois, supra, and required the State to now provide him a transcript.

In Linkletter v. Walker, 85 S.Ct. loc. cit. 1737, footnote 13, the Court notes Eskridge as a retroactive application of Griffin.

Five recent United States Supreme Court cases have also held rights announced in prior decisions of that court are wholly retroactive.

Witherspoon v. State of Illinois, 391 U.S. 510, 523, 88 S.Ct. 1770, 1777–1778, 20 L.Ed. 2d 776, 785–786, held the jury selection standard announced therein was retroactive.

Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476, determining a co-defendant's confession implicating defendant at a joint trial denies defendant his right of confrontation was held retroactive in Roberts v. Russell, 392 U.S. 293, 294–295, 88 S.Ct. 1921, 1922, 20 L.Ed.2d 1100, 1102.

Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336, involving defendant's right to counsel at parole revocation hearing was held retroactive in McConnell v. Rhay, 393 U.S. 2, 3, 89 S.Ct. 32, 33, 21 L. Ed.2d 2, 3.

White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, determining defendant had a right to counsel at a preliminary hearing if it was a critical stage of the criminal proceeding was held retroactive in Arsenault v. Commonwealth of Massachusetts, 393 U.S. 5, 6, 89 S.Ct. 35, 36, 21 L.Ed.2d 5, 7.

Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255, determining that the absence of a witness from the jurisdiction would not justify the use at trial of preliminary hearing testimony unless the State

had made a good-faith effort to secure the witness' presence was held retroactive in Berger v. California, 393 U.S. 314, 315, 89 S.Ct. 540, 541, 21 L.Ed.2d 508, 510.

The State suggests that because the United States Supreme Court has failed to follow Linkletter in Johnson v. New Jersey, Fuller v. Alaska, and Desist v. United States, all supra, reason demands that we examine our rule concerning applicability of a "change of law" which it contends is based solely on Linkletter.

" * * * The considerations which determine the extent to which a change of law shall be applied to cases then pending is discussed in both Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, 889, and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, 1204–1205. Important factors include the purpose of the new rule; the extent to which the old standard had been relied upon; and the effect a particular kind of application will have on the administration of justice. Underlying all of these is the basic inquiry as to how seriously the discarded rule affected the 'very integrity of the fact-finding process' or produced 'the clear danger of convicting the innocent.'

"Both Johnson v. New Jersey and Stovall v. Denno point out that the extent to which a new rule of criminal procedure should be applied varies from case to case depending on the 'peculiar traits' of the rule in question and the 'degree' to which it affects the fact-finding process." State v. Jackson, supra, Iowa, 173 N.W.2d at 569.

Based on a consideration of decisions cited in this division we hold the rule announced in Bester should be applied retroactively to cases on direct review when Bester was filed. However, as stated in State v. Jackson, supra, "it does not follow that *every* change must be given similar effect in *every* case".

■ II. The court gave the following instruction which defendant contends in his other assignment was reversible:

"It is claimed by the State that the defendant, Gary Wayne Thrasher, fled and endeavored to escape from arrest by flight, and in this regard you are instructed that if you find the offense charged herein was committed and that the defendant fled from the scene for the purpose of avoiding and retarding the prosecution, then such flight was a circumstance tending to connect the defendant with the commission of the crime; and the jury would be justified in considering such flight as evidence of guilt.

"The credit and weight, if any, to be given such evidence is a question solely for you to determine in the light of all the evidence in this case."

Defendant does not contend the instruction contained an incorrect statement of law, but argues it was improper to give the instruction if the State did not prove actual flight for the purpose of avoiding arrest and prosecution.

Defendant claimed the shooting was accidental. He fled the scene and was later apprehended some eight blocks from his apartment—a factual situation similar to that in State v. Bester, supra, Iowa, 167 N.W.2d at 710–711, where we said in holding the flight instruction was properly given:

" 'It is well settled that the conduct of an accused person following the commission of an alleged crime may be circumstantially relevant to prove both the commission of the acts charged to the accused and the intent and purpose with which those acts were committed. Among such acts are flight of the accused and concealment of the results of the crime.' Rivers v. United States, 9 Cir., 270 F.2d 435, 438.

"This court has consistently approved the giving of a flight instruction where such instruction is germane to the evidence. State v. Wimbush, Iowa, 150 N.W.2d 653, 656, 657 and cases cited. Defendant does not question the propriety of the instruction in a proper case. The evidence was in sharp conflict as to whether the shooting

was accidental or something more that would amount to first degree murder or one of the included offenses."

In holding instruction as to the effect of "flight" may be proper even though there is no direct evidence the accused fled to avoid arrest, we said in State v. Bige, 195 Iowa 1342, 1347–1348, 193 N.W. 17, 20:

"It is thought by appellant that the court was not warranted in giving an instruction on flight, because there was no foundation in the evidence, for that it was not shown that defendant knew he was accused or suspected, and that he fled to avoid arrest. We have held that evidence is properly admissible, and that it is proper to instruct on this question, even though the accused had not been charged with the commission of the offense. It was for the jury to say, under all the circumstances, whether he departed because of his consciousness of guilt. * * * [Citing authorities]."

There was no error in giving the instruction under the factual circumstances before the court.

III. Because of the error in giving the instruction bearing on the weight to be given defendant's testimony, the case is— Reversed.

RAWLINGS, BECKER, LeGRAND and REES, JJ., concur.

STUART, J., MOORE, C. J., and LARSON, J., concur specially in result.

UHLENHOPP, J., takes no part.

STUART, Justice (concurring specially).

I concur in the reversal but cannot agree with the implication that an instruction which stated the established law at the time it was given without objection constitutes reversible error because the law has been changed while the case is on direct review. See the special concurrence in State v. Wisniewski, Iowa, 171 N.W.2d 882, 888.

I do not view this situation as one involving the retroactivity of our decision in State v. Bester, Iowa, 167 N.W.2d 705, 706–707. Defendant properly preserved his objection and has raised this issue on appeal. If Bester had not already been decided, this case would in all probability announce the principles set out in Bester. Bester is now additional authority for defendant's position. He, of course, could not be denied the benefit of a properly raised issue because we have in the interim between trial and appeal decided another case on the same issue in support of his position.

MOORE, C. J. and LARSON, J., join in this special concurrence.