**People of the State of Illinois, Plaintiff-Appellee, v. Robert L. Jones, Defendant-Appellant.**

**Gen. No. 69–25.**

Third District.

June 11, 1970.

Gerry M. Rinden, of Rock Island, for appellant.

James N. DeWulf, State's Attorney of Rock Island County, and Robert Schearer, of Rock Island, for appellee.

RYAN, J.

Defendant, Robert L. Jones, was tried by a jury in the Circuit Court of Rock Island County, convicted of the crime of robbery, and sentenced to the penitentiary for a term of not less than two nor more than ten years. The crime charged is a robbery that occurred at a tavern known as Augie's in Rock Island, Illinois, at approximately 4:45 p. m. on August 15, 1968.

Testifying for the people were the tavern owner, a barmaid and three police officers. The only witnesses called for the defendant were a police officer and the sheriff. The defendant offered no evidence to controvert that of the people, elected not to testify in his own behalf, and rested his defense on three alleged procedural errors which he believes were prejudicial. They are: First, that the trial court erred in denying defendant's motion to suppress evidence of the defendant's identification by the barmaid immediately following his arrest, because (a) Defendant was at that time denied right to counsel; and (b) The identification procedure employed was illegal, overly suggestive and tainted the subsequent courtroom identification. Second, that the trial court erred in denying defendant's motion for a change of venue which was based on defendant's belief that he could not obtain a fair trial in Rock Island County due to adverse newspaper publicity. And third, that the trial court erred in not declaring a mistrial or granting the defendant a new trial when the prosecution failed to produce a written police statement for the defendant's inspection at the exact time that he was entitled to have it.

The barmaid's first contact with the defendant occurred when he was a patron in the tavern on the day prior to the robbery. She remembered that he drank draught beer and paid for all his drinks. On the following

32

day, which was the day of the robbery, the barmaid was also on duty while the defendant was in the tavern for almost five hours immediately preceding the robbery. She recalled that the defendant was a white male about 5', 10" tall, in his late thirties, was wearing a long sleeved shirt with the sleeves rolled up and khaki colored pants. He had light brown or blonde hair which was worn extra long, down almost to the top of his shirt collar. On the day of the robbery, she sold him draught beer and several bottles of Schlitz beer, totalling 12 to 14 drinks. She even remembered buying the defendant a drink. She noticed that the defendant used the ladies' restroom several times during the day as he wanted to use the mirror in the ladies' restroom to comb his hair.

Just prior to the robbery, the barmaid, the defendant and two unidentified patrons were in the tavern. The two unidentified patrons left. The defendant then got up, grabbed the barmaid and told her it was an "armed robbery." He cautioned her not to say anything; took $88 out of the cash register with his right hand and stuck the money in his pocket; shoved her backwards and ordered her to stand in the men's toilet for ten minutes. She went into the men's toilet; heard the front door slam; and came out. She immediately called the Rock Island Police and reported the robbery and a description of the defendant.

About 15 or 20 minutes after the robbery, the barmaid was on the telephone talking to the proprietor when two policemen entered the tavern with the defendant in custody. Before the policemen said anything, she told the policemen that that was the man who had robbed her. The policemen then asked her if she was sure and she said "yes."

The circumstances of the defendant's arrest were that one Pickett, an off-duty policeman, was at the police station when a call came in concerning an armed robbery at Augie's Tavern, with a description of the robber.

■

Pickett drove his own car towards the vicinity of Augie's Tavern looking for a man who fit the description. He noticed the defendant standing on a street corner and observed that he fit the description. Pickett drove on past him; stopped and got out of his car and waited. Pickett was in plain clothing. When the defendant approached Pickett, Pickett pulled his gun; placed him under arrest and searched him. He removed $87 from the defendant's pocket. Officer Pickett advised the defendant of "his rights" and then placed him in handcuffs. Two other officers arrived on the scene and removed the defendant to the scene of the robbery, where he was identified by the barmaid. At this point, only 15 or 20 minutes had elapsed since the robbery had taken place. They then took the defendant to the police station where he was booked. Defendant was not provided with nor accompanied by an attorney at the time of the face-to-face confrontation with the victim. No formal lineup was offered.

Defendant contends that the deprivation of counsel at that time, coupled with an identification procedure which he feels was illegal and overly suggestive, tainted the subsequent courtroom identification and thereby deprived the defendant of his constitutional rights. In support of this contention, defendant cites the U. S. Supreme Court cases of United States v. Wade, 388 US 218; Gilbert v. California, 388 US 263; and Stovall v. Denno, 388 US 293. The Wade and Gilbert decisions established the principle that a defendant is entitled to have counsel present at a post-indictment lineup. As the instant case involved a preindictment confrontation some 15 or 20 minutes after the arrest, the decisions in Wade and Gilbert have no application. People v. Palmer, 41 Ill2d 571, 244 NE2d 173. There remains the Stovall decision. That case established the principle that, unless extenuating circumstances exist, an unnecessarily suggestive identification

34

procedure which is conducive to mistaken identification may be a denial of due process of law under the Federal Constitution. In the Stovall case, the Court affirmed a conviction where, on the day following a stabbing and prior to any indictment or appointment of counsel, the accused was taken individually to the victim's hospital room for identification. The Court decided that due process of law had not been denied the defendant under the particular facts of that case and justified the procedure, because it was not known for certain that the victim would survive the incident. Our own Supreme Court had an opportunity to consider and apply the Wade, Gilbert and Stovall decisions in People v. Palmer, above cited, and in People v. Blumenshine, 42 Ill2d 508, 250 NE2d 152.

In People v. Blumenshine, our Supreme Court stated as follows:

> ". . . Not every viewing of a suspect or suspects alone will be considered a denial of due process, for there may be justifying or saving circumstances. See, e. g., identifications upheld in: (1) Stovall v. Denno, 388 US 293, . . . , where the viewing in a hospital was 'imperative.' It being uncertain that the wounded victim would survive; (2) People v. Speck, 41 Ill2d 177, . . . , where a principal factor was that it was apparent that the identifying witness had an excellent opportunity to observe the defendant at the time of the crimes; (3) People v. Robinson, Ill, 250 NE2d 898, where the person identified was known to the witness prior to the crime; (4) People v. Bey, Ill, 246 NE2d 287, where uncommon distinguishing characteristics were the principal means of identification."

The instant case clearly fits the saving circumstances suggested in the Speck, Robinson and Bey cases. The victim here had an excellent opportunity to observe the

defendant at the time of the crime and did so, in fact, for some five hours previous to the crime and on the previous day as well. The defendant could thus be said to be "known" to the victim if not by name, then at least by sight. The defendant was dressed and wore his hair distinctively, and further called attention to himself by going to the ladies' restroom several times to use the mirror to comb his long hair.

We feel that the guidelines suggested by the three United States Supreme Court cases which were cited have not been violated in this case on this point. To hold otherwise would be to widen and extend those guidelines beyond the present state of the law.

Defendant next contends that he could not obtain a fair trial due to adverse newspaper publicity and that the trial court erred in refusing his motion for change of venue on this ground. The trial in this case commenced on January 8, 1969. Prior to that date, on December 27, 1968, an article concerning the defendant's involvement in this robbery appeared in the Rock Island Argus, one of four newspapers in Rock Island County. The article referred to "positive identification" of the defendant at the time of his arrest; and that the defendant "matches the description" of the "bandit" sought.

A motion for change of venue on account of prejudice of the inhabitants of the county is addressed to the sound discretion of the trial court. In order to support such a motion, it is necessary that the defendant raise a reasonable apprehension that the defendant cannot receive a fair trial in the county. People v. Witte, 350 Ill 558, 183 NE 622. This issue was considered at length and well discussed by our Supreme Court in People v. Berry, 37 Ill2d 329, 226 NE2d 591, and People v. Gendron, 41 Ill2d 351, 243 NE2d 208. As was stated by the Court at page 331 in the Berry case:

36

". . . Exposure of a crime and the background of an accused to publicity does not necessarily lead to the conclusion that all the inhabitants of a community must automatically be considered infected with prejudice toward the accused. To so state is to preclude the literate from jury service, and in turn, to put a premium on national notoriety as a means of avoiding trial anywhere. . . .

". . . each case must be considered under its own facts. Obviously, this case is not in any way similar to the United States Supreme Court cases cited by defendant (Sheppard v. Maxwell, 384 US 333 . . . and Irvin v. Dowd, 366 US 717 . . .). In those cases 'massive, pervasive and prejudicial publicity' saturated the community and carried over and through the trials. Aroused public passion and prejudice were clearly demonstrated and clearly evident. . . ."

In both the Berry and the Gendron cases the defendants received far more newspaper publicity than did the defendant in the instant case, yet the convictions were affirmed. In both of those cases, as in the instant case, prospective jurors were examined with regard to possible prejudice and it was felt that fair and impartial jurors were selected. In the present case, 21 jurors were questioned and not one remembered hearing about the case, reading about the case, or knowing the defendant. This is not difficult to understand. Rock Island is one of our more populous counties. An uneventful robbery involving no physical injury and the theft of $88, which receives a single mention in one of four newspapers published in the county, is hardly likely to attract widespread attention or to arouse public prejudice. We believe that the trial court exercised proper discretion in this case in denying defendant's motion for change of venue. The newspaper article cited by defendant did not raise any

automatic conclusion of prejudice. Furthermore, any hint of prejudice in this regard, however strong or flimsy, was cured by the voir dire examination previously alluded to.

█ █ The third and final point to be dealt with is defendant's contention that the trial court erred in not declaring a mistrial or granting the defendant a new trial when the prosecution failed to produce a written police statement for the defendant's inspection at the exact time that he was entitled to it. Prior to the trial the court entered an order ". . . That the State shall furnish and have ready for inspection and provide to the attorney for the defendant at the time of trial prior statements of any witnesses who will testify and have made prior statements which have been reduced to writing, or reports, including police reports which are in the witnesses' own words . . . ." After the direct and cross-examination of the barmaid and during the cross-examination of Officer Pickett, the defendant learned that the officer had made a written report based on a statement given by the barmaid. Immediately upon learning of this statement, the defendant's counsel moved for a mistrial on the grounds that the State had not produced the statement in violation of the court order previously entered. This motion was denied, as was defendant's motion for a new trial, on the same grounds. Immediately upon the disclosure of Officer Pickett's statement, a copy was furnished to the defendant. The barmaid was recalled and the defendant was allowed to cross-examine the witness on her statement. If any error occurred when the statement was not furnished initially, that error was cured when the statement was furnished, the witness recalled, and the defendant given the opportunity to cross-examine. The defendant has alleged prejudice but has failed to demonstrate any. The most that can be made of this point is that the ordinary order for the examination of witnesses was al-

tered slightly by the recalling and recross-examination of a witness. However, such alterations of order occur frequently and without prejudice in many trials. Moreover, there is no showing as to what the police report contained nor was there any showing that there was anything in the police report which could be considered impeachment material. Courts of review will not reverse for harmless, technical or formal errors where substantial justice has been done. A party seeking reversal must show that the error complained of actually or presumably has worked him an injury. 3 ILP, Appeal and Error, §§ 801, 802, 804. There has been no showing of injury in this case and we can only conclude that the error complained of was either harmless or cured or both.

The judgment of the Circuit Court of Rock Island County is affirmed.

Affirmed.

STOUDER, P. J. and ALLOY, J., concur.