**STATE of Iowa, Appellee,**

**v.**

**William Edward SMITH, Appellant.**

**No. 54092.**

Supreme Court of Iowa.

Dec. 15, 1970.

Frank A. Comito, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., and Ray A. Fenton, County Atty., Des Moines, for appellee.

MOORE, Chief Justice.

Defendant's appeal of his robbery conviction asserts the trial court erred in failing to declare a mistrial after striking evidence of victim's viewing of him in the absence of counsel shortly after the robbery. The primary question is whether defendant's constitutional right to counsel as guaranteed by the Sixth Amendment to the United States Constitution was under the facts here violated. We hold it was not.

We briefly summarize the facts as disclosed by the record. About 2:30 a. m. February 22, 1968 a blue and white Rambler was driven into and parked near the front door of the Clark gas station near McKinley and Fleur Drive in Des Moines. The sole occupant, a man described by the attendant, Vernon Colgrove, as approximately 5′10″ with dark hair and wearing a dark jacket or suit got out and after engaging Colgrove in conversation for a short time then went to the rest room. Thereafter the man came into the station, stated he had a gun in his pocket, said "this is a hold up", and demanded money. Under fear of being assaulted Colgrove gave the robber a ten, a five and what he estimated was ten one dollar bills. Col-

grove was ordered to face the wall where he remained a few minutes and then turned around only to find the robber was still in the station. After Colgrove was again forced to face the wall he heard the Rambler leaving the station and immediately called the police, reported the robbery, described the vehicle and reported it was driven away on Fleur or McKinley Avenue.

About 2:40 a. m. a police officer after receiving a radio report of the robbery observed a blue and white Rambler traveling east on McKinley and traversing the intersection at Southwest Ninth Street at a high rate of speed. He gave chase for several blocks. Then the Rambler, occupied only by the driver, stopped in a residential driveway. The driver and owner of the car was defendant. Other officers were called, including Detective Gillispie who gave defendant the Miranda warnings. Defendant was very belligerent, denied any knowledge of the robbery and claimed his wife lived where he had stopped. She could not be located there. The officers found a ten, a five and ten one dollar bills on the front seat of defendant's Rambler automobile.

At the instance of the police Colgrove went to the Des Moines police station an hour or an hour and a half after the robbery. His testimony as abstracted in the record includes:

"When I got in the booking room Mr. Gillispie told me they would bring somebody out and told me to go sit to the left. When they called me to come to the police station they told me they wanted me to come down because they had somebody in custody they wanted to see if I could identify. So while going down to the station I had in mind or the idea if I could identify this person. When the Defendant was brought in he was accompanied by a uniform policeman and brought to the booking counter. While the Defendant was at the counter Detective Gillispie continued to ask him some questions. When they brought the Defendant in the door I knew he was the one so I shook my head, and then I stayed there for about five minutes or so before I left. When they brought the Defendant he was wearing a dark sports coat or suit jacket and a white shirt." Defendant was booked under charges of traffic violation and "investigation to detectives for robbery". He was formally charged with robbery later that morning. Colgrove further testified he observed defendant about ten minutes at the scene of the robbery and was able to identify him based thereon independent of his observations at the police station.

Prior to trial defendant filed a motion to suppress all identification testimony of Colgrove and Detective Gillispie as being tainted by the "line-up" testimony of the events at the police station in absence of an attorney for defendant. After hearing the testimony of Colgrove and Gillispie the court overruled defendant's motion to suppress.

On trial before the jury testimony of Colgrove and Gillispie was submitted by the State without objection by defense counsel. Thereafter the trial judge on his own motion, apparently concluding his ruling on the motion to suppress was in part erroneous, struck the testimony of Colgrove and Gillispie regarding the events at the police station. The jury was so advised and told the testimony was being stricken because no attorney for defendant had been present.

Defendant then moved for a mistrial on the ground the stricken testimony was so prejudicial he could not receive a fair trial. The trial court denied the motion. Defendant's assigned errors here are that Colgrove's identification at the police station was tainted and so prejudicial that denial of his motion for a mistrial was an abuse of the trial court's discretion.

Defendant's contention his viewing shortly after the robbery by the victim Colgrove in the absence of counsel violated his Sixth Amendment rights is based on the holdings in United States v. Wade, 388

U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

In both Wade and Gilbert the defendants were confronted in post-indictment formal lineups; both had counsel at the time they were placed in the lineup for identification purposes, but the lineup was conducted without notice to and in the absence of the accused's appointed counsel. In Wade the lineup was held some eight months after the crime occurred. In Gilbert the lineup occurred over two and a half months after the crime was perpetrated and one month after the arrest. In each the Supreme Court held defendant's constitutional rights had been violated.

Here we are confronted with a far different factual situation than found in Wade and Gilbert. This is a viewing and identification by the victim of the only suspect within an hour and a half after the robbery was committed. No United States Supreme Court decision on a similar fact situation has come to our attention. Federal circuit and several state appellate courts have, however, considered analogous situations. Their holdings are not entirely in agreement. See 14 Vill.L.Rev. 535. The great majority however have drawn a distinction between viewing and identification by the victim shortly after commission of the offense and the formal lineup identification made at a later time as in Wade and Gilbert.

In Bates v. United States, 132 U.S.App. D.C. 36, 405 F.2d 1104 (1968), Chief Justice Burger, then a circuit judge, wrote an opinion where two assaulted women viewed and identified an arrested suspect within approximately thirty minutes after the offense was committed. He had no counsel and none was present. In affirming conviction the court at page 1106 says:

"There is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy. The rationale underlying this is in some respects not unlike that which the law relies on to make an exception to the hearsay rule, allowing spontaneous utterances a standing which they would not be given if uttered at a later point in time. An early identification is not error * * *. To the contrary, the police action in returning the suspect to the vicinity of the crime for immediate identification in circumstances such as these fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is fresh."

In Russell v. United States, 133 U.S. App.D.C. 77, 408 F.2d 1280 (1969), cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L. Ed.2d 245, defendant's conviction of housebreaking and larceny was affirmed. There within a few minutes after the offense was committed the police brought to the scene a man matching the description given by a witness near the scene. At pages 1283, 1284, the court in distinguishing the case with Wade and Gilbert states:

"The confrontations disapproved in these cases were post-indictment lineups. Similarly, though it spoke in broad terms, the Court was evidently focusing primarily on the routine lineup and show-up procedures employed by the police to obtain evidence for use at trial. The Court was concerned both to enhance the fairness of such procedures and to expose to judge and jury any elements of unfairness or unreliability which might attend them. In these typical cases, where counsel had been retained and time was not a factor it could find 'no substantial countervailing policy considerations * * * against the requirement of the presence of counsel.'

"The present case, however, involves an immediate on-the-scene confrontation at 5 o'clock in the morning when there would

necessarily be a long delay in summoning appellant's counsel, or a substitute counsel, to observe a formal lineup. Such delay may not only cause the detention of an innocent suspect; it may also diminish the reliability of any identification obtained, thus defeating a principal purpose of the counsel requirement."

The special concurrence by Judge Danaher includes this at page 1286: "Even to suggest that the confrontation described might require the presence of a lawyer or that a lineup be conducted seems to me an exercise in stultification. I have no slightest doubt that there is no basis for an intimation that there had been a denial of due process."

In United States v. Davis, 2 Cir., 399 F. 2d 948 (1968), defendant's conviction of knowingly transporting a stolen car in interstate commerce was affirmed. There a state trooper arrested defendant as a suspect and enroute to the police station stopped at a toll collector's booth where defendant was identified as driving through earlier. He was not then represented by counsel. With reference to Wade, Gilbert and Stovall v. Denno, 388 U.S. 293, 87 S. Ct. 1967, 18 L.Ed.2d 1199, all decided June 12, 1967, the court in 399 F.2d 948, at page 951 says:

"It is hard to believe the Court meant to prevent an officer from making such a routine, uncontrived inquiry as to require that the victim and the bystanders be carted off to a police station, held on the spot until counsel could be provided, or dismissed until a lineup attended by counsel could be arranged at some later time."

A later case from the second circuit with similar facts, United States v. Sanchez, 2 Cir., 422 F.2d 1198 (1970) cites Davis and holds on-the-scene identification evidence admissible where defendant protested his innocence and was viewed by the victim shortly after commission of mail theft. At page 1200 the court says: "The prompt on-the-scene confrontation in this case was consistent with good police work."

We have not passed directly on the question here presented. Absence of an attorney was not argued in State v. Wisniewski, Iowa, 171 N.W.2d 882 (1969) where witnesses were taken to the police station to view defendant soon after a grocery robbery. We affirmed conviction for robbery. At page 885, we say: "We find no violation of due process. The identification was made promptly after commission of the crime. The whole future course of the police investigation depended upon a determination that defendant was, or was not, one of the parties to the crime. Far from encouraging false identification, the quick viewing of defendant by the witnesses would minimize such a possibility. No attempt was made to influence the witnesses. As pointed out in the Stovall case, an early identification procedure, if properly carried out, serves just as well to free a suspect from unjust suspicion as it does to fasten the accusation of guilt upon him." See also State v. Essary, Iowa, 176 N.W.2d 854 (1970).

Several state appellate courts after study of Wade, Gilbert and Stovall have held victim viewing of a suspect within a few hours after the offense does not infringe upon constitutional right to counsel or deny due process of law. See Commonwealth v. Gray, Mass., 257 N.E.2d 924 (1970); Commonwealth v. Bumpus, 354 Mass. 494, 238 N.E.2d 343 (1968); State v. Meeks, 205 Kan. 261, 469 P.2d 302 (1970); People v. McMath, 45 Ill.2d 33, 256 N.E.2d 835 (1970); People v. Jones, Ill.App., 259 N.E.2d 585 (1970); People v. Wright, 124 Ill.App.2d 223, 260 N.E. 2d 265 (1970), (accused seen at police station soon after rape and robbery); O'Neil v. State, Tenn.Cr.App., 455 S.W.2d 597 (1970); Watkins v. State, Tex.Cr. App., 452 S.W.2d 444 (1970).

Defendant here makes no claim and there is no evidence the police made any impermissible suggestions to give rise to a substantial likelihood of irreparable misidentification which would constitute denial of due process. His claim of tainted iden-

tification is based on absence of counsel when the victim soon after the robbery viewed and identified defendant. Our review of the facts surrounding that identification and study of the cited authorities lead us to conclude absence of counsel did not violate defendant's constitutional rights. The identification of which defendant complains was not "tainted".

The trial court's striking the evidence of Colgrove and Gillispie gave defendant more than he was entitled to receive. Defendant's assigned errors are therefore without merit.

Affirmed.

All Justices concur.