STATE of Iowa, Appellee,

v.

Gene SALAZAR, Appellant.

No. 56109.

Supreme Court of Iowa.

Dec. 19, 1973.

Joe Nutting, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., Dennis Jontz, Asst. Atty. Gen., and David Dutton, County Atty., for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, REES and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Following jury trial, defendant was convicted of assault with intent to commit robbery. He appeals and we affirm.

At about 1:30 A.M. on July 12, 1972, two men attempted to rob a service station attendant in Waterloo, Iowa. They ran into the building, their faces covered with nylon hose masks, each armed with a sawed-off shotgun. Jenkins, the 18 year-old attendant, responded to the demand for money by telling them (truthfully) the money was in a locked depository on the pump island and he had no key. During a brief verbal exchange a gun was fired which narrowly missed him. When a truck was driven into the station the frustrated bandits ran into the area behind the building.

Jenkins was at first too frightened to furnish helpful information to the police who responded to his telephone call. He later told Detective Quinn of the Waterloo force there were two men involved. One was dark complexioned, not black but possibly Mexican, with "semi-long bush hair." This man, he said, was about five foot ten inches tall and weighed about 165 pounds. The other man was slightly larger, white, with sandy to dark colored hair. Jenkins told the police (and later testified) he could see the men's features clearly through the nylon masks which did not distort their facial characteristics. He concentrated more on the dark man because he was demanding the money and stood in front of him.

When the descriptions were broadcast on police radio, two Waterloo patrolmen recalled seeing two men of that general appearance in a red Buick about two blocks from the service station at approximately 1:00 A.M. At that time the car's occupants aroused their curiosity. The dark complexioned driver was wearing sunglasses and a straw hat pulled down on his face at 1:00 o'clock in the morning. These patrolmen by radio caused the license number to be checked against a stolen car list, with negative results. After they learned of the attempted robbery, the description and license number of the red Buick were also broadcast.

At about 2:00 A.M. these suspects were apprehended at LaPorte City, driving south from Waterloo in the wanted car on highway 218. LaPorte City is approximately 17 miles (and 20 minutes time at posted speeds) from the scene of the attempted robbery. Other law enforcement officers in that area came to where the Buick was stopped. The men and car were checked for weapons and nothing was found. When one of the men started "getting

nervous" and "yelling" the two were handcuffed. Detective Quinn by radio directed the suspects be returned to the service station for possible identification by the attendant.

The men were returned to the station in two separate police cars and delivered to Detective Quinn at approximately 2:30 A. M. At that time there were approximately 12 police officers in the area. The testimony leaves a question whether it was then raining lightly. Quinn placed the handcuffed men against a squad car parked in a lighted area beside the station and requested Jenkins to look at them and to tell him if they were the two who had come into the station. Jenkins took about a minute to make a positive identification. Quinn asked him if he were sure and Jenkins said yes.

The suspects were then formally arrested, given the Miranda warning, and taken to the police station. During the search incident to the booking process the police found in defendant's billfold a sales slip for $1.33 from Dunn's grocery store in Waterloo. The check-out clerk testified a man came into the store on the night of the attempted robbery and purchased nylons for that sum. He was "pretty sure," but could not swear, defendant was the purchaser.

Although an intensive search of the area behind the station and the ditches along highway 218 was conducted, the masks and guns were never found. Defendant's boot matched a muddy footprint found in the alley behind the station. A witness testified defendant was in a Waterloo home near the service station at about 10:00 P.M. on the night of the robbery attempt. Defendant's sole witness was his wife who described him as much smaller than indicated in the station attendant's original description. Other evidence or lack of evidence in the record is not particularly relevant to the issues in this appeal.

Jenkins was given no opportunity to make an in-court identification of defendant, independent of his prior identification made when defendant was in custody at the service station. The question whether he could have so identified defendant without reference to the contested identification procedure is not answered in the record or transcript before us.

Prior to trial defendant moved to suppress all identification testimony of the station attendant because the "on-the scene" identification of defendant was so unnecessarily suggestive and conducive to irreparable mistaken identification that defendant was denied constitutional due process. The same motion urged suppression of the grocery clerk's testimony and the cash register receipt on the ground the receipt was obtained by illegal search following an illegal arrest, and that the clerk's testimony was "fruit of the poisonous tree." This motion was submitted to a judge other than the trial judge several weeks prior to trial. The motion was overruled.

I. *Admissibility of cash register receipt.*

■ We conclude the warrantless arrest by the LaPorte City police officer was made with probable cause. See Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Evans, 193 N.W.2d 515 (Iowa 1972); State v. Hollingshead, 191 N.W.2d 680 (Iowa 1971); State v. King, 191 N.W.2d 650 (Iowa 1971), cert. denied, 406 U.S. 908, 92 S.Ct. 1617, 31 L.Ed.2d 819 (1972); State v. Ricehill, 178 N.W.2d 288 (Iowa 1970), cert. denied, 401 U.S. 942, 91 S.Ct. 945, 28 L. Ed.2d 222 (1971); State v. Brown, 261 Iowa 656, 155 N.W.2d 416 (1968). This being so, the booking room search was reasonable as incident to a lawful arrest. State v. Entsminger, 160 N.W.2d 480 (Iowa 1968); State v. Ricehill, supra; see Annot., 19 A.L.R.3d 727, 739–741 at § 5 (1968 Supp., 1972).

■ In any event, defendant made no trial objections on this ground when the

grocery clerk testified, and only objected on the ground of relevancy when the cash register receipt was offered into evidence. This case does not present the situation found in State v. Evans, supra, where the suppression evidence was ruled on in the absence of the jury during trial and we held the objection need not be renewed before the jury in order to preserve the claimed error. But we have said where the motion to suppress is made and ruled on prior to trial a proper trial objection must be made when the objectionable material is offered in order to preserve the error. State v. Hinsey, 200 N.W.2d 810 (Iowa 1972). The facts in this case more nearly parallel *Hinsey.* We hold there is nothing before us for review on this issue. See State v. Houston, 209 N.W.2d 42 (Iowa 1973).

II. *Admissibility of identification testimony.*

Defendant concedes Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) holds the right-to-counsel constitutional guarantees, recognized in the *Wade* and *Gilbert* decisions, have no application to this type of on-the-scene, preindictment, identification procedure. See United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). Iowa follows the Kirby holding. Williamson v. State, 201 N.W.2d 490 (Iowa 1972); State v. Jackson, 199 N.W.2d 102 (Iowa 1972). However, defendant vigorously assails the procedure conducted at the service station following his arrest as violating his due process rights under Amendments 5 and 14, United States Constitution.

■ The due process test to be applied, articulated in Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967), prohibits identification testimony where the confrontation conducted is "unnecessarily suggestive and conducive to irreparable mistaken identification." This rule has been consistently recognized

by both the United States Supreme Court and this court. See Kirby v. Illinois, supra; Foster v. California, 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969); Williamson v. State, supra; State v. Essary, 176 N.W.2d 854 (Iowa 1970); State v. Wisniewski, 171 N.W.2d 882 (Iowa 1969).

■ In many of our decisions the issue of the alleged unconstitutionality of an on-the-scene show-up has been avoided by an in-court identification independent of the prior identification procedure. See, e. g., State v. Houston, supra; State v. Masters, 196 N.W.2d 548 (Iowa 1972); State v. Schaffer, 182 N.W.2d 413 (Iowa 1970); State v. Smith, 182 N.W.2d 409 (Iowa 1970). The burden is on the State to show by clear and convincing proof the in-court identification has an independent origin and does not depend for its validity upon the illegal pretrial identification procedure. State v. Jones, 193 N.W.2d 509 (Iowa 1972); State v. Wisniewski, supra.

It is unclear whether it was by mistake or design the State in this instance made no attempt to carry that burden. By necessity we must therefore apply the *Stovall* test to defendant's on-the-scene show-up, evaluated in light of the "totality of the surrounding circumstances." Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); State v. Essary, supra; State v. Wisniewski, supra.

■ It does not aid defendant to say his confrontation with the station attendant was "suggestive." It is generally conceded such one-on-one confrontations are inherently suggestive. Stovall v. Denno, supra; Russell v. United States, 133 U.S.App.D.C. 77, 408 F.2d 1280, cert. denied, 395 U.S. 928, 89 S.Ct. 1786, 23 L.Ed.2d 245 (1969); Wise v. United States, 127 U.S.App.D.C. 279, 383 F.2d 206 (1967), cert. denied, 390 U.S. 964, 88 S.Ct. 1069, 19 L.Ed.2d 1164 (1968); Dillard v. State, 274 N.E.2d 387 (Ind.1971). But the balancing of "substantial countervailing policy considerations" compels the holding that on-the-scene identification procedures, held shortly after the

crime, are not violative of due process unless the confrontation is *unnecessarily* suggestive. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Stovall v. Denno, supra; United States v. Perry, 145 U.S.App.D.C. 364, 449 F.2d 1026 (1971); Russell v. United States, supra; Davis v. State, 13 Md.App. 394, 283 A.2d 432 (1971). Those substantial countervailing policy considerations have been chronicled in both federal and Iowa decisions. See, e.g., Russell v. United States, supra; State v. Wisniewski, supra.

■ Defendant complains that a number of police officers were present in the area. The record implies some were there to continue the search in the event defendant and his companion were not connected with the crime. Others had transported defendant and his companion to the service station in two separate cars. Several continued that night to search the area for weapons and evidence. There is no showing they surrounded defendant or the station attendant; in fact, the record indicates Detective Quinn alone had defendant in custody during the confrontation. The only police officer queried as to his location said he "stayed in the background." The presence of police officers is a usual and necessary element in the ordinary identification confrontation. It cannot be said they convert the situation to one "unnecessarily suggestive." See United States v. Miller, 145 U.S.App.D.C. 312, 449 F.2d 974 (1970.)

■ Nor is the fact defendant and his companion were handcuffed such a special circumstance as to invalidate the procedure. This element, and defendant's proximity to a police car, have already been held not to support a claim of unnecessary suggestiveness. State v. Schaffer, supra; Dillard v. State, supra. The circumstances here were not more suggestive than the situation in State v. Smith, supra, where the witness viewed the defendant in the police station while he was being interrogated at the booking counter. We there said trial court's striking of the show-up testimony gave defendant more than he was entitled to receive.

In Dillard v. State, supra, defendant enumerated ten factors relating to his on-the-scene show-up to support his charge of unreliability of the identification. The first five factors were: 1) absence of counsel, 2) defendant returned in police car, 3) defendant only person in police car, 4) identification witness surrounded by five or six officers in uniform, and 5) defendant made to get out of police car. The Indiana Supreme Court observed, 274 N.E.2d at 390, "Points one through five are usual elements in any police conducted on-the-scene confrontation and to the extent they are suggestive they are not unnecessarily so." That court also held the additional factors, including defendant having blood on his face and being handcuffed, did not deny defendant due process under the *Stovall* rule. The confrontation elements in the case *sub judice* are even less suggestive than the elements found in *Dillard*.

Significantly, at trial the station attendant, Jenkins, remained unshaken in his identification of defendant. Relevant to his inability to give a more detailed description of defendant and his companion prior to the show-up is the following observation from Russell v. United States, supra, 408 F.2d at 1284:

"[R]ecognition of a person or face would seem to be as much the product of a subjective mental image as of articulable, consciously remembered characteristics. A man may see clearly in his 'mind's eye' a face or a figure which he is hard put to describe adequately in words. Though the image of an 'unforgettable face' may occasionally linger without any translation into words, photographic recall is often ephemeral. Vivid in the flash of direct observation, it fades rapidly with time. And the conscious attempt to separate the ensemble impression into particular verbalized fea-

tures, in order to preserve some recollection, may well distort the original accurate image so that it is the verbalized characteristics which are remembered and not the face or the man.

"Balancing all the doubts left by the mysteries of human perception and recognition, it appears that prompt confrontations in circumstances like those of this case will 'if anything promote fairness, by assuring reliability * * *.' "

We hold defendant was not denied due process by the procedure employed in his on-the-scene show-up at the service station. We find no reversible error and this case is therefore affirmed.

Affirmed.