**STATE of Iowa, Appellee,**

v.

**Earl Leroy EMERY, Appellant.**

**No. 57692.**

Supreme Court of Iowa.

June 25, 1975.

P. F. Elgin, Indianola, for appellant.

Richard C. Turner, Atty. Gen., John Grant Mullen, Asst. Atty. Gen., and Michael Hansen, Asst. County Atty., for appellee.

Heard before MOORE, C. J., and Le-GRAND, REES, REYNOLDSON, and HARRIS, JJ.

HARRIS, Justice.

Defendant was convicted of robbery with aggravation in violation of §§ 711.1 and 711.2, The Code. His appeal raises questions of speedy indictment, on-the-scene identification in absence of counsel, and claimed prosecutorial misconduct. We affirm.

Earl Leroy Emery (defendant) was arrested March 20, 1974 following an armed holdup of a Des Moines grocery store by two masked gunmen. Ernest Hoopes drove by the store at the time, returning home from church with his son. His son first

noticed the robbery taking place. Hoopes stopped the car and also observed it. He saw a third man crouched outside. He then saw the three men run and get into a red Pontiac Firebird.

Hoopes followed the car, observed the license number, had his son write it down, verified its accuracy, and thereafter stopped and phoned police. Police then stopped the car which was occupied by defendant and two other men. Upon a search it was learned the men each had considerable currency in his possession. Defendant had $158 in a roll of bills in his pocket and $1 in his billfold.

The police took the three back to the store and exhibited them to Martin Laugk, Mike Burns, and Steve Foldes who had observed the robbery. Observations of these witnesses will be described in a later division.

At trial defendant offered alibi evidence placing him in an Indianola tavern until 8:30 to 9:00 p. m., a half hour to hour after the robbery. Various witnesses, including defendant, testified defendant was using crutches at the time following an accidental shooting. Defendant's ability to walk without crutches became a disputed trial issue.

I. On March 21, 1974, the day following his arrest, defendant was taken before an associate district court judge who entered an order of commitment and set preliminary examination for March 27, 1974. This examination was never held or waived; trial was upon a county attorney's information filed April 24, 1974.

On April 24 defendant moved to dismiss because he had not been indicted within 30 days as required by § 795.1, The Code. The motion was overruled on the ground he had never been held to answer so the 30 day period had not begun to run. Defendant's first assignment challenges this ruling.

■ Under § 795.1, unless good cause is shown, a prosecution must be dismissed if an indictment is not returned within 30 days after a person is *held to answer* for a

public offense. According to our cases a defendant is not held to answer within the meaning of the statute until preliminary examination (chapter 761, The Code) is completed or waived. State v. Thomas, 222 N.W.2d 488, 491 (Iowa 1974); State v. Lee, 222 N.W.2d 471, 473 (Iowa 1974); State v. Sowle, 218 N.W.2d 573, 574 (Iowa 1974); State v. Morningstar, 207 N.W.2d 772, 775 (Iowa 1973).

■ By the foregoing rule the 30 day period did not start to run because defendant was never held to answer. Defendant urges the rule is inapplicable by reason of a peculiar error by the judge who set the preliminary examination. In setting the examination, and in ordering defendant committed pending the same, the judge used inappropriate forms. The forms used, though filled in by the judge so as to clearly and expressly set a preliminary examination, had been printed for use at a later stage in criminal proceedings. The form was obviously intended for use as a warrant of commitment prescribed by § 761.20, The Code. Such a warrant is intended for use after a preliminary examination is held and an accused is in fact held to answer.

The form accordingly contained the statement, untrue in this case, defendant was held to answer. The question then becomes whether the erroneous statement, incorporated by use of an improper form, changes the fact. We think not. Under the cases cited the question turns on what stage has been reached in the proceedings. A magistrate could not, after a preliminary examination was held or waived, prevent a "held to answer" status from existing by erroneously finding it did not. Neither can he cause the status to exist by erroneously finding it did. Defendant's first assignment is without merit.

II. Defendant's second assignment challenges identification testimony gathered on the scene in a manner defendant believes was unnecessarily suggestive and conducive to irreparable mistaken identification. He relies on State v. Salazar, 213 N.W.2d 490

(Iowa 1973). The facts surrounding the on-the-scene identification generally are not disputed. Defendant and his two companions were taken to the store about 45 minutes after the holdup. Donnie Conz, one of the three, was first brought before the witnesses but none could positively identify him as one of the robbers. Defendant was next to be brought before the witnesses. Mike Burns positively identified defendant, stating he limped on the same leg, his pants and shoes were the same, and he had the same voice. Steve Foldes, another store employee, also identified defendant as one of the robbers. When Allen Brown, the third suspect, was brought in neither Burns nor Foldes could positively identify him.

Defendant claims two other facts are important. Defendant was handcuffed when he was brought to the store and was required (as were the others) to talk in the presence of the witnesses. Defendant testified he was required to say, "This is a stickup." Mike Burns, one of the witnesses, testified defendant was required to say, "Get over there." No attorney representing the accused was present at this time.

■ We believe defendant's second assignment is without merit. Defendant did not have a right to have his attorney present at the on-the-scene preindictment identification. In State v. Salazar, supra, at page 493, we said:

"Defendant concedes Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972) holds the right-to-counsel constitutional guarantees, recognized in the *Wade* and *Gilbert* decisions, have no application to this type of on-the-scene, preindictment, identification procedure. (Authorities)."

*Salazar* presented a factual situation strikingly similar to the instant case. In *Salazar* a gas station was held up by two persons who were soon arrested. They were returned to the station where about 12 policemen were gathered. Defendants were handcuffed and placed against a squad car for identification. We affirmed

defendant's conviction. Our reasons need not be repeated here.

■ We do not believe this case should be distinguished from *Salazar* because defendant was required to speak. Such a procedure is generally permitted. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). See also Annot., 24 A.L.R.3d 1261.

In the instant case the State has a most convincing argument in pointing out two of the three suspects were not identified by the witnesses. The failure of the witnesses to identify the other two suspects strongly negates any suggestion the identification procedure was unnecessarily suggestive.

■ Defendant also complains the State failed to show the witnesses' in-court identification was independent of the original on-the-scene identification. Without conceding any such failure, defendant's argument must be rejected because the original on-the-scene identification procedure was not shown to be illegal. It is only where the original on-the-scene identification is illegal that such a burden is placed upon the State. *Salazar*, supra, 213 N.W.2d at 493. Defendant's second assignment is without merit.

III. As his final assignment defendant complains he was denied a fair trial by reason of prosecutorial misconduct. The claim is in three parts.

First defendant points to inquiries by the prosecutor concerning defendant's participation in line-ups for armed robberies other than the one for which he was on trial. Objections to three such inquiries were sustained. Objection to another such inquiry, occurring during defendant's cross-examination, was overruled because it appeared from the question it referred to the line-up involved in this case.

Over defendant's objections the State was allowed to introduce testimony defendant expressed an intent to escape from a

hospital where he was taken for attention following his arrest.

Finally defendant argues the prosecutor improperly referred to him as a "crook" during final argument to the jury.

Recently, in State v. Hansen, 225 N.W.2d 343, 348 (Iowa 1975) we held:

" * * * Not all misconduct entitles defendant to a new trial. It must reach such proportions that his first trial became an unfair one. (Authorities).

"We have also held trial courts are vested with considerable discretion in granting or refusing new trials for misconduct of counsel. (Authorities)."

■ We do not believe this record reveals an unfair trial. Three of the objections to testimony concerning other line-ups were sustained. The trial court was in a better position than we to determine whether or not an unfair trial resulted from the fact the jury heard the questions and objections.

■ Testimony of defendant's expressed intent to escape from the hospital was admissible for a purpose other than to indicate he would flee. The charge was defended in part by defendant's attempt to create the impression he was physically unable to walk without crutches so he could not have participated in the crime. The State showed defendant's inquiry of possible escape routes only to show defendant believed he was then capable of walking. This contradicted his claim he was physically unable to participate in the robbery.

■ Defendant waived any objection to the prosecutor's comment during final argument. He made no record of such comment. Neither did he object to it at the time, but raised the alleged error for the first time on motion for a new trial. Any error was not preserved. State v. Sage, 162 N.W.2d 502, 503–504 (Iowa 1968); State v. Horsey, 180 N.W.2d 459, 460 (Iowa 1970).

Affirmed.