STATE of Iowa, Appellee,

v.

Thomas Francis McMANUS, Appellant.

No. 60144.

Court of Appeals of Iowa.

Dec. 28, 1977.

Application for Further Review Denied by Supreme Court on Feb. 17, 1978.

Emmit J. George, Jr. and Joseph C. Johnston of Cahill, Johnston, Poula & Goetz, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Lona J. Hansen, Asst. Atty. Gen. and Eugene J. Kopecky, Linn County Atty., for appellee.

Heard by ALLBEE, C. J., and DONIELSON, SNELL, OXBERGER and CARTER, JJ.

ALLBEE, Chief Judge.

Defendant, Thomas Francis McManus, appeals his conviction for conspiracy to deliver a controlled substance in violation of § 204.401(1), The Code. He contends that a showup conducted by the police subsequent to his arrest violated his right to due process, and that failure to allow him counsel at the showup violated the sixth amendment.

We first set out the pertinent facts. On the 29th and 30th of January, 1976, Russell Eugene Dobbins was working as an informant for agent Steven Graham Keenley, of the Iowa Department of Public Safety, Division of Narcotic and Drug Enforcement. In that capacity, Dobbins escorted Stephen Hammond to a 1:00 A.M. rendezvous north of the Oxford Exit from Interstate 80, for the purpose of picking up a large quantity of marijuana. The night was dark and overcast. As Dobbins approached the meeting place in his Volkswagen, he saw an individual cross the road in front of the Volkswagen, and stand by a Ford Granada parked at the side of the road. The Granada's headlights were off. Dobbins stopped his car, and the individual approached the Volkswagen to discuss the business at hand. During that discussion, Dobbins had an opportunity to observe the individual for one

or two minutes,[1] at a distance of one to two feet.[2] The only light available during their discussion was from the dash lights of the informant's car.[3] At trial, Dobbins identified the individual with whom he had talked as the defendant.

Later that morning, McManus and Hammond were arrested. Dobbins was also taken into custody, to maintain his cover. At the Cedar Rapids police station, Agent Keenley told Dobbins that McManus was present in an interrogation room. Keenley then took Dobbins into the room and exposed him to McManus, ostensibly to cause defendant to see Dobbins in custody and thereby continued the ruse. The interrogation room was well lighted so that Dobbins had an opportunity for a clear view of McManus's features. Subsequently, Dobbins was shown a photograph of McManus.

Defendant moved for suppression of the showup identification, and all subsequent identifications, in court or in any proceeding. After hearing evidence on the motion, Judge William R. Eads ordered the State to refrain from any reference to the police station confrontation, except in response to evidence of that meeting produced by the defense. The State was authorized to offer Dobbins's testimony relative to his encounter with defendant at the earlier rendezvous. Judge Eads found the facts to be essentially as we have recited them but noted in addition that defendant was heavily bearded. This observation was borne out by Dobbins's descriptive identifications of McManus at the suppression hearing[4] and at trial.[5] Dobbins testified in the suppression hearing that McManus's facial characteristics had not changed since the late night rendezvous.[6]

■ This case is controlled by *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).[7] We begin our analysis on the assumption that the procedure used by the police here was both suggestive and unnecessary.[8] It was upon an identical assumption that the Supreme Court decided *Manson v. Brathwaite*.[9] Our concern is whether the in-court identification in the present case is reliable; reliability is "the guiding factor in the admissibility of both pre-trial and in-court identifications . . . ."[10]

■ The analysis which guides the determination of reliability involves five factors.[11] We now apply that analysis to the facts of this case.

1. The opportunity to view. Dobbins testified that he talked to defendant for one or two minutes, at a distance of one to two feet. The only light was from the dash lights of Dobbins's Volkswagen. Dobbins also viewed McManus as he crossed the road, in front of Dobbins's car headlights.[12] McManus was heavily bearded at the time. Such a characteristic does not require bright lighting to distinguish.

2. The degree of attention. Dobbins could not be termed a casual or passing observer. He was present at the rendezvous point for the sole purpose of assisting in the apprehension and conviction of the parties participating in the transaction.

---

1. Suppression Hearing Transcript (hereinafter cited as S. Tr.) 15, ll. 10–12; 33, ll. 14–16.

2. S. Tr. 31, ll. 11–14; Transcript of Trial (hereinafter cited as Tr.) 107, l. 12.

3. Tr. 107, l. 25; 108, l. 1.

4. S. Tr. 39, ll. 23–24.

5. Tr. 105, ll. 20–22.

6. S. Tr. 26, l. 25; 27, ll. 1–2; 30, ll. 8–10.

7. *See State v. Washington*, 257 N.W.2d 890, 894 (Iowa 1977).

8. *See State v. Salazar*, 213 N.W.2d 490, 493 (Iowa 1973).

9. 432 U.S. at 99, 97 S.Ct. at 2245, 53 L.Ed.2d at 144.

10. *Manson v. Brathwaite*, 432 U.S. at 106, n. 9, 97 S.Ct. at 2249, n. 9, 53 L.Ed.2d at 149, n. 9.

11. *Manson v. Brathwaite*, 432 U.S. at 114, 97 S.Ct. at 2253, 53 L.Ed.2d at 154.

12. S. Tr. 25.

3. The accuracy of the description. There has been no showing that Dobbins gave any description of McManus which was either accurate or inaccurate.

4. The witness's level of certainty. Dobbins never showed anything less than absolute conviction that the man he met north of the Oxford Exit was McManus.

5. The time between the crime and the confrontation. The view of McManus in the police station occurred only hours after Dobbins conversed with him to accomplish the marijuana delivery. Such a short delay would minimize the likelihood of Dobbins merely acquiescing in an identification out of frailty of memory.[13]

Finally, we recognize that Dobbins had been charged with four drug offenses, and that his cooperation as an informer was in exchange for dismissal of those charges. This factor is not relevant to our present inquiry. The due process test which we here apply is directed to the capacity and opportunity for a witness to acquire knowledge of a defendant's physical features. The possibility that Dobbins was lying for his own preservation is not a factor which distinguishes identification testimony from any of a myriad of other situations.[14] Any interest Dobbins had in this prosecution was properly presented to the jury. That panel was capable of assessing his credibility.

Weighing the corrupting effect of the challenged identification against the indicators of Dobbins's ability to make an accurate identification compels the conclusion that there is no very substantial likelihood of misidentification. "Short of that point, such evidence is for the jury to weigh." [15] Trial court's decision to allow the in-court identification was correct.

Defendant's argument for requiring counsel at the showup, which was conducted before arraignment or the filing of the county attorney's information, is without

merit. *See Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *State v. Salazar*, 213 N.W.2d 490, 493 (Iowa 1973).

AFFIRMED.

---

**13.** Further, Dobbins testified that he was capable of identifying defendant on the basis of the late night encounter, and independently of the police station confrontation. S. Tr. 32, ll. 9–13.

**14.** Defendant does not argue that a violation of *Miller v. Pate*, 386 U.S. 1, 87 S.Ct. 785, 17 L.Ed.2d 690 (1967) has occurred.

**15.** *Manson v. Brathwaite*, 432 U.S. at 116, 97 S.Ct. at 2254, 53 L.Ed.2d at 155.